IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ENRIQUE OLMEDO SILVA,            )
                                 )
              Petitioner,        )    Civil No. 03-6358-TC
                                 )
         v.                      )    ORDER AND
                                 )    FINDINGS AND
STATE OF OREGON,                 )    RECOMMENDATION
                                 )
              Respondent.        )

COFFIN, Magistrate Judge.

    Petitioner Enrique Olmedo Silva is a state prisoner who is represented by counsel in this 28 U.S.C. § 2254 federal habeas petition. He challenges his August 2000 convictions for Robbery in the First Degree and resulting sentence. (Doc. 12, Ex. 101.) His petition, filed November 19, 2003, raises the following claims: (1) violation of his right to a speedy trial; (2) ineffective assistance of counsel; and (3) an involuntary guilty plea. (Doc. 1.) Respondent moves to dismiss petitioner's habeas application on the grounds that the petition is barred by violation of the Antiterrorism and Effective Death Penalty Act's (AEDPA) 1-year statute of limitations and by procedural default. (Doc. 10.) Petitioner concedes that his claims are untimely and procedurally defaulted, but argues that dismissal is not appropriate because he

1 Order and Findings and Recommendation

is entitled to equitable tolling of the statute of limitations and his procedural default is excused by cause and prejudice. Petitioner requests an evidentiary hearing on the issues of cause and prejudice. For the following reasons, I deny petitioner's request for an evidentiary hearing, find that petitioner is not entitled to equitable tolling or the cause and prejudice exception, and recommend that the court dismiss this action.

## Background

On July 30, 1996, petitioner aided in an armed robbery of $240. On August 17, 1996 petitioner aided in an armed robbery of $1,700. (Doc. 46, Ex. A, p. 8-9.) A Umatilla County Grand Jury indicted Petitioner on August 23, 1996. Approximately 3 years later, on September 7, 1999, federal authorities arrested petitioner for an unrelated charge. On February 17, 2000, while in federal custody, petitioner moved for a speedy trial on the Umatilla County charges. (Doc. 12, Ex. 104.[1]) Petitioner appeared in Umatilla County Court on June 1, 2000, and the Court appointed him counsel.

On August 25, 2000, petitioner appeared with his court appointed attorney. A court-certified interpreter was present to assist petitioner. (Doc. 46, Ex. A, p. 2.) Petitioner's counsel attempted to withdraw due to the "complete and irreparable breakdown in the attorney-client relationship." (Id. at p. 3.)

---

[1] Respondent's exhibit 104 is petitioner's state habeas petition. The speedy trial motion is exhibit "C" of that document.

2 Order and Findings and Recommendation

Petitioner's reason for wanting a new attorney was his attorney's failure to provide him with a speedy trial and his dissatisfaction with his attorney's advice. (Id. at p. 4.) The court denied the motion to withdraw. (Id. at p. 6.) After a short break, petitioner pled guilty to 2 counts of First Degree Robbery and 1 count of failure to appear pursuant to a sworn release agreement. He was sentenced to 90 months for one count and 70 months for the other count; both sentences were imposed concurrently. (Id. p. 7-8,10-14; Doc. 12, Ex. 101.)

### Evidentiary Hearing

Petitioner requests an evidentiary hearing to develop his assertion that the interference of federal prison officials and petitioner's own lack of English language proficiency caused him to procedurally default his habeas claims and to fail to file his federal petition within AEDPA's 1-year limitations period.

Rule 8 of the Rules Governing Section 2254 Cases expressly authorizes evidentiary hearings. Such hearings typically develop the petitioner's substantive habeas claims, but they also serve to resolve factual issues related to avoidance of procedural default and equitable tolling. If a petitioner alleges facts which, if true, would entitle him to relief, he may be entitled to an evidentiary hearing. See e.g. Mendoza v. Carey, 499 F.3d 1065, 1071, n. 6 (9th Cir. 2006)(stating that remand for evidentiary hearing would clear up factual ambiguities about allegations that might entitle petitioner to relief). However, if the petitioner's

claim can be resolved on the existing record, a federal evidentiary hearing is unnecessary. Baja v. Ducharme, 187 F.3d 1075, 1078 (9th Cir. 1999).

Here, the court held a scheduling conference on September 17, 2007 to discuss the development of the record relevant to petitioner's equitable tolling. (Docs. 66, 70.) Pursuant to the September 17, 2007 conference, the parties submitted supplemental briefing accompanied by supporting affidavits and exhibits related to petitioner's equitable tolling arguments.[2] The supplemental affidavits and exhibits are over three hundred pages long, and develop the factual record. For instance, the supplemental exhibits include: petitioner's high school records; detailed prison records; billing records from petitioner's post conviction relief counsel; an affidavit from petitioner's post conviction relief counsel; an affidavit from other inmates, and an affidavit from petitioner. In short, given the breadth of the supplemental record, there is no additional evidence petitioner could present at a hearing that would not be redundant of evidence already before the court. The factual record concerning petitioner's difficulties due to his issues with language and prison officials is well developed, and I deny petitioner's request for a hearing.

///

---

[2] The supplemental briefing and exhibits is also relevant to petitioner's claim that his procedural default is excused. (Doc. 45, p. 2 stating "[t]he cause for this default is the same as that justifying equitable tolling.")

4 Order and Findings and Recommendation

## AEDPA's Statute of LImitations

On April 24, 1996, Congress enacted AEDPA, which places a 1-year statute of limitations on the filing of federal habeas corpus petitions. 28 U.S.C. § 2244(d). A federal habeas petition must be filed 1 year from the date a petitioner's conviction became final either by conclusion of direct review or the expiration of time for seeking such review. 28 U.S.C. § 2244(d)(1)(A). The 1-year limitations period applies to all federal petitions filed after AEDPA's effective date. Petitions filed over 1 year from the date a petitioner's conviction became final are barred from federal review unless petitioner can establish that he is entitled to equitable tolling of the statue of limitations. Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1288 (9th Cir. 1997), overruled in part on other grounds by Calderon v. United States Dist. Ct. (Kelly), 163 F.3d 530 (9th Cir. 1998)(en banc).

The parties agree that AEDPA applies to the instant petition and agree that the petition was untimely by at least some period.[3] The parties dispute whether petitioner is entitled to equitable tolling of the 1-year limitations period. Under Ninth Circuit precedent, equitable tolling of AEDPA's limitations period is available "'only if extraordinary circumstances beyond a prisoner's

---

[3]Petitioner asserts he is 77 days past AEDPA's 1-year deadline; respondent contends that petitioner is 518 or 517 days late. (Doc. 45, p. 4; doc. 56 p. 4.) I do not need to resolve this issue; however, because both parties agree that petitioner was past the 1-year deadline when he filed.

5 Order and Findings and Recommendation

control make it impossible to file a petition on time.'" Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999)(internal citations omitted). Equitable tolling is "unavailable in most cases." Miles, 187 F.3d at 1107. "The threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule." Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002). This high bar is necessary to effectuate "AEDPA's statutory promise of encouraging prompt filings in federal court in order to protect the federal system from being forced to hear state claims." Guillory v. Roe, 329 F.3d 1015, 1018 (9th Cir. 2003). Petitioner bears the burden of demonstrating grounds for equitable tolling. Id.

Petitioner argues he is entitled to equitable tolling because prison officials confined him in segregation and special housing, transferred him between prisons, failed to provide him with his legal materials, and failed to provide him with interpreters or Spanish-language legal materials. He claims that despite these external forces, he diligently pursued his state and federal collateral remedies. (Doc. 45, p. 6.)

In support of equitable tolling, petitioner states that, although his English has improved since being incarcerated, he is still not able to read and write in English. (Doc. 46, Ex. B1.) Unless an interpreter is available, petitioner relies on other inmates or his family to translate written English documents. (Id.) While in special housing and segregation, petitioner had problems finding a translator, and relied on something called a

"fishing line"-a string inmates use to send messages from cell-to-cell, to translate his legal documents. (Id.) Petitioner also filed affidavits from two other inmates-one in federal custody and another in state custody, which state that petitioner does not write or speak English very well and that each of these inmates helped petitioner translate his legal documents. (Doc 101, Exs. 202, 203.) Prisoner Rodolfo Moreno states that along with serving as petitioner's "jailhouse lawyer" and doing legal research and translating documents, he also spoke with petitioner's state post-conviction-relief counsel because petitioner's English was not good enough to speak with his attorney directly. (Id., Ex. 202.) Petitioner also includes his high school transcript for Ninth grade to demonstrate that he was in Secondary Bilingual Orientation-a program for students with language challenges, and took classes such as developmental reading and ESL survival. (Doc. 65, Ex. 202.)

Respondent contends that, if petitioner had acted diligently, he could have filed his federal habeas petition on time. In support of its position, respondent points to evidence in the record that petitioner could adequately communicate in English. Specifically, petitioner filed numerous legal documents in state and federal courts in English, wrote letters to his attorney and requests to prison officials in English, scored close to proficient in English in a November 2000 placement test at Sheridan prison on placement test scores at Sheridan prison, was the English as a

7 Order and Findings and Recommendation

Second Language student of the month at Sheridan prison in January 2001, and was deposed in English with no translator. (Doc. 86, Ex. 115, pp. 328-331, 294, 57, 244, 325, 326, 292; Ex. 103; doc. 72, Ex. 109, p. 2; see also, doc. 85 pp. 3-5 for dates and explanations of exhibits.) Petitioner's post-conviction counsel Carol Fredrick submitted an affidavit stating that, although she originally employed an interpreter to assist with communicating with petitioner, she discovered that the interpreter was not needed and had no problem communicating directly with petitioner. (Doc. 72, Ex. 109, p. 2.) Ms. Fredrick states that petitioner was deposed in English and appeared to understand and accurately respond to questions and that petitioner would call her himself and discuss letters written in English that she had sent him with no problem. (Id.) Respondent also submits prison records indicating that petitioner had access to his legal materials while in segregation in Sheridan prison. (Doc. 86, Ex. 115, p. 87 (noting in the personal property inventory that petitioner kept his legal materials while in detention.)

Respondent also points to prison records which reflect that during a phone conversation on May 24, 2002 a person called "S" told petitioner: "She also needs your court date. She will also see about a lawyer for you." Petitioner responded: "Get this stuff done first, worry about a lawyer later." (Doc. 86, Ex. 115, p. 141.) Based on a reading of the telephone transcript as a whole, it appears that the "stuff" refers to heroin. (Id. at 140-41.)

8 Order and Findings and Recommendation

Petitioner was found guilty of attempting to smuggle narcotics into the prison based, in part, on this phone conversation with "S." (Id. at 130-42.) Petitioner, however, denied attempting to smuggle heroin and maintained that he was talking about having his children brought to the prison. (Id.)

After a careful review of the record before me, I find that petitioner has not demonstrated that he is entitled to equitable tolling of AEDPA's 1-year limitations period. Guillory, 329 F.3d at 1018. First, petitioner has not established that he is entitled to equitable tolling based on his claim that prison officials prevented him from timely filing his petition by depriving him of his legal materials. The record establishes that petitioner kept his legal materials while he was in detention. (Doc. 86, Ex. 115, p. 87.) Petitioner disputes the prison's property records by stating that respondent does not establish "exactly what access" petitioner had to his legal documents. (Doc. 100, p. 9.) Such conclusory and vague statements claiming that petitioner lacked access to his legal materials are not enough to demonstrate that prison officials' interference with petitioner's access to his legal documents entitles him to equitable tolling. Lott v. Mueller, 304 F.3d 918, 923 (9th Cir. 2002)(observing that equitable tolling determinations "turn [] on an examination of detailed facts"); see also Kellogg v. Strack, 269 F.3d 100, 103 (2nd Cir. 2001)(petitioner's bare assertions that the conditions of his confinement prevented him from filing his motion earlier are

9 Order and Findings and Recommendation

insufficient to excuse the delay). Moreover, events such as placement in administrative segregation generally do not qualify as extraordinary circumstances for purposes of equitable tolling. <u>Lindo v. Lefever</u>, 193 F.Supp.2d 659, 663 (E.D.N.Y. 2002); <u>see also</u>, <u>Lindquist v. Idaho State Bd. of Corr.</u>, 776 F.2d 851, 858 (9th Cir. 1985)(certain circumstances require prison officials to regulate availability of legal materials).

Similarly, the record does not support petitioner's claim that prison official impeded him from timely filing his petition by failing to provide petitioner with a Spanish language translator or Spanish-language legal materials. Petitioner's assertion that he is not proficient in English is belied by the evidence in the record. Petitioner attended ninth grade in the United States at a Secondary Bilingual Orientation Center, where he was enrolled in, among other things, developmental reading and ESL (English as a Second Language) survival skills. (Doc. 65, Exs. 202-203.) On November 15, 2000, petitioner scored a 218 in a prison ESL placement test. (Doc. 86, Ex. 115, p. 328-330.) That score is close to proficient in English and just below an 8th grade reading level. (<u>Id.</u>) Petitioner also submitted numerous requests to prison officials in English, communicated in English with his state post-conviction relief counsel, and was deposed in English without a translator during his state post-conviction proceedings. (Doc. 46, Ex. A, p. 9; Doc. 72, Ex. 109; Doc. 86, Ex. 115, pp 293, 325-26, 292.)

10 Order and Findings and Recommendation

I do not find petitioner's arguments that this evidence does not establish his proficiency in English persuasive. For example, petitioner makes much of the fact that another inmate, Rudi Moreno, assisted him with legal filings. The record shows that petitioner informed his state post-conviction relief counsel that Mr. Moreno was willing to "keep doing legal research for you regarding my case." (Doc. 101, Ex. 208.) Counsel's billing records reflect that she spoke with Mr. Moreno regarding petitioner's trial transcripts and received documents from him. (Doc. 101, Ex. 206.) The billing statements do not reflect that counsel discussed other aspects of petitioner's case with Mr. Moreno; instead the records show that counsel received and made calls directly to petitioner regarding the case status. (Id.) The evidence shows that Mr. Moreno was assisting with legal research, but does not indicate that petitioner was unable to communicate with his own counsel in English. Petitioner also asserts that, upon close examination, it appears that his written communications to prison officials were written by several different people. This may be true, but it does not indicate that the actions of prison officials prevented petitioner from timely filing his habeas petition. Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003)(It is the petitioner's burden to show that he is entitled to equitable tolling, and the determination is a fact specific inquiry).

Instead the record shows that petitioner was able to file court documents in English while in segregation and his own

statements indicate that he was able to use the inmate "fishing line" to get legal assistance. (Doc. 46, Exs. B1, D, and E.) The Ninth Circuit has noted that a non-English speaking petitioner seeking equitable tolling "must, at a minimum demonstrate that during the running of the AEDPA time limitation, he was unable, despite diligent efforts, to procure...translation assistance from an inmate, library personal, or other source." Mendoza v. Carey, 449 F.3d 1065, 1070 (9th Cir. 2006)(internal citations omitted). "[A] petitioner who demonstrates proficiency in English or who has the assistance of a translator would be barred from equitable relief." Id. (internal citations omitted). In short, a petitioner's lack of proficiency over the English language generally is not an extraordinary circumstance warranting equitable tolling, especially when, as is the case here, the petitioner has demonstrated some ability to communicate in that language. Cobas v. Burgess, 306 F.3d 441, (6th Cir. 2002)(petitioner's lack of ability to speak English did not warrant equitable tolling even assuming he had help in drafting documents in English; he nevertheless was able to communicate with the person who helped him).

Finally, I note that the Supreme Court in Pace v. DiGugliemo made clear that the availability of equitable tolling hinged on the petitioner acting diligently. Id. 544 U.S. 408, 424-26 (2005); see also, Lacava v. Kyler, 398 F.3d 271, 277(stating that the "obligation [to act diligently] does not pertain solely to the

filing of the federal habeas petition, rather it is an obligation that exists during the period appellant is exhausting state court remedies as well.") Here, evidence in the record establishes that during a phone conversation with "S" on May 23, 2002 "S" said to petitioner: "She also needs your court date, she will also see about a lawyer for you." (Doc. 86, Ex. 115, pp. 140-41.) Petitioner responded: "Get this stuff done first, then worry about a lawyer later." (Id.) Whether petitioner was talking about his children, as he maintains, or whether he was arranging to bring drugs into the prison, his directive to "worry about a lawyer later" indicates that he was not exercising reasonable diligence regarding his post conviction relief. Pace,

In sum, petitioner has not met his high burden of establishing that prison official's failure to provide him with a translator constituted extraordinary circumstances which entitled him to tolling of AEDPA's 1-year limitation period. 544 U.S. at 424-26. I find that petitioner is not entitled to equitable tolling and recommend that his petition be dismissed with prejudice for failure to file his petition within AEDPA's 1-year limitation period.

## **Procedural Default**

The procedural default doctrine provides that when a petitioner has defaulted on a claim by violating a state procedural rule that would constitute adequate and independent grounds to bar direct review before the United States Supreme Court, he may not raise the claim in a federal habeas proceeding absent a showing of

cause and prejudice or actual innocence. Coleman v. Thompson, 501 U.S. 722, 729-30 (1991); Park v. Cal., 202 F.3d 1146, 1150 (9th Cir. 2000). Thus, a petitioner who fails to satisfy the state procedural requirements forfeits his right to present his claim in a federal habeas proceedings. Here, petitioner concedes that his federal habeas claims are procedurally defaulted. (Doc. 45, p. 2.) He argues, however, that there is cause-the interference of prison officials and his own lack of English proficiency, and default which excuse the default.

The Supreme Court has not "identified with precision exactly what constitutes 'cause' to excuse a procedural default." Edwards v. Carpenter, 529 U.S. 446, 551 (2000)(internal citations omitted). "[T]he existence of cause for procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded [his] efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). The Supreme Court has recognized interference by officials as an objective impediment to complying with a state's procedural rule. Id. at 488-89.

I find that petitioner has not shown that interference by prison officials was an objective external factor which caused him to default his habeas claims. As discussed above, although petitioner was in segregation during the period he had to appeal the denial of his state post-conviction relief petition, prison records show that he had access to his personal legal materials.

14 Order and Findings and Recommendation

(Doc. 86, Ex. 115, p. 87.) Petitioner also filed legal documents during that time. (Doc. 46, Exs. D and E.) The right to access to courts does not require the state to enable a prisoner to "litigate effectively once in court." Lewis v. Casey, 518 343, 354 (1996). Instead the right of access to the courts is satisfied so long as the state provides the prisoner with the "capability of bringing [habeas or post conviction petitions]." Id. Here, petitioner was afforded the capability of bringing challenges to his confinement.

Petitioner also asserts that his state post-conviction counsel should have filed a filed the notice of appeal on his behalf. However, this alleged failure of his counsel is not attributable to prison officials, and, therefore, cannot be the basis for cause to excuse the procedural default. Smith v. Idaho, 392 F.3d 350, 356 (9th Cir. 2004)(if alleged dereliction of counsel occurred in a proceeding where there is no constitutional right to counsel such as post-conviction review, there can be no cause for ineffective counsel). Similarly, petitioner's English language difficulties are not a sufficient objective factor amounting to cause to excuse the procedural default. Hughes v. Idaho State Bd. Of Corr., 800 F.2d 905, 909 (9th Cir. 1986).

In sum, I find that petitioner has not shown cause to excuse his procedural default. Thus, federal habeas review of his claims is precluded. I recommend that his claims be dismissed because his claims are procedurally defaulted.

///

## Conclusion

### Order

I deny petitioner's motion for an evidentiary hearing.

### Findings and Recommendations

I find that petitioner is not entitled to equitable tolling and that he had not shown cause to excuse his procedural default. I recommend that the court dismiss his federal habeas petition because it is untimely and because his claims are procedurally defaulted.

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due no later than ten days after the date this order is filed. The parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). If no objections are filed, review
of the Findings and Recommendation will go under advisement on that date. If objections are filed, any party may file a response within fourteen days after the date the objections are filed. Review of the Findings and Recommendation will go under advisement when the response is due or filed, whichever date is earlier.

DATED this  26  day of October, 2009.

THOMAS M. COFFIN
United States Magistrate Judge